Good morning. I'm Tanya Rose. I represent appellant Edwin Ted Lockett. So this appeal centers on the scope of the bar of Heck v. Humphrey, and more particularly whether it applies to the facts of Appellant's case, that is, where he ultimately pled to a wet reckless. And he, while the criminal case was pending, he timely filed a 1983 action for violation of his Fourth Amendment rights against unreasonable search and seizure. Because he ultimately pled out his criminal case, Magistrate Judge Kellison decided, made an order that he had no jurisdiction to hear the case based on the holding of Heck v. Humphrey. Appellant argues that the Heck bar does not apply in this case. And appellant also argues that should this Court deem that it is to apply, the inevitable discovery rule could actually be applied to show that perhaps the ‑‑ there was not a clash between damages finding in a 1983 claim and an ultimate conviction. And I'm not sure that that's the case, but I don't think it's a case that would be considered guilty to the wet reckless. That's one of the arguments correct. But it is my firm belief that the Heck bar does not even apply in the first instance to the fact ‑‑ to a search and seizure case of this case. I'm trying to get at, but is it because the search and seizure is just not connected ‑‑ is not sort of independent from his plea at the plea hearing? I'm not ‑‑ I beg your pardon. I'm not sure I understand your question. But my understanding of the Supreme Court jurisprudence following Heck is that it really is by five justices now through concurrences. I guess I'm asking the wrong ‑‑ I guess I'm not asking my question clearly. Okay. If you ‑‑ why would ‑‑ if you prevail in your Fourth Amendment claim in Federal Court, why doesn't that undermine the validity of his plea to the wet reckless? Assuming that the Heck bar does apply. Well, just forget the Heck bar. Why doesn't that undermine the validity of the plea? Well, as I set forth in the brief, what I believe to be the case is the following. The police officers got a tip from a witness who saw the appellant walking away from his car and perceived him as being drunk. They could have on that basis alone attempted to get a warrant and gone into his house and done a proper ‑‑ tried to get a proper search warrant. How long would that have taken? You know. Would he have sobered up in the meantime? Possibly, possibly not. Is there any doubt in your mind that your client pleaded guilty, pardon me, Nolo, because he knew that the evidence procured at his house by the policeman would be used at the trial? In other words, the motion to suppress had been denied. They didn't have anywhere near enough evidence to convict him without the testimony of the policeman that he failed his field sobriety test, right? I have to deem that's correct. But in answer to your question, I mean, it's not in the record, but that's not why he plead out the case. It was a money issue. But anyway, couldn't afford to continue to try the case. You have some doubt in your mind that had the evidence of the police officer been otherwise not available, he would not have pleaded guilty, not have pleaded Nolo? He ‑‑ That was the key evidence, wasn't it? There's no question that was the key evidence to the police officers, to the prosecution. There's no question about that. But in any case, I do believe that the inevitable discovery rule theoretically could be deemed to apply. I believe footnote 4 in the Heck opinion carves out an exception for search and seizure claims and articulates various reasons why, because there are various doctrinal doctrines that could apply to prevent it, to prevent its application from demonstrating a clash from undermining the conviction. But I also believe that the Court's jurisprudence has been clear over the course of several cases since, and particularly Spencer v. Chemna, that they ‑‑ that the five justices believe that ‑‑ Ms. Rose, could I interrupt you for a second? Sure. Could you answer Judge Pius's question? Perhaps you can answer it yes or no. Uh-huh. Does ‑‑ would this undermine the validity of a conviction? If he prevails on his 1983? Let me ask you this. It's difficult to answer, right? Well, because it's about how it's framed, and it sort of begs the question of my argument. But I don't want to be disrespectful. I don't know if it begs the question, but let me ask you this. When he pled guilty to the wet reckless, was there a factual basis that he stipulated to? Do we know? Yes, and I believe it's in ‑‑ I believe it's in the record. Well, the only thing I saw was the minutes from the municipal court or the court of limited jurisdiction, which just says that, you know, they added a count three, the wet reckless, and he pled to it. Well, to be perfect, I have to speak with perfect candor because I'm before you. And I was there. I was in his ‑‑ I was there, and my recollection is that he did. I don't recall what they were. On the record, there may have been a factual basis. We don't know what it was. Absolutely. I recall that, but I don't recall what it was. Yes. There's no transcript of the plea hearing. I don't ‑‑ if it's not included in the ‑‑ the answer is I don't know. You don't know. Yeah. But I also ‑‑ Do you know whether you stipulated before the trial judge that there was a factual basis? To be truthful, once again, I have to say I do not recall. I was there. I was not his criminal attorney, but I was there for this process. You know, because sometimes in the ‑‑ I remember from my days in Muni court, there was ‑‑ we just asked the lawyers, do you stipulate to a factual basis? And they say, oh, yes, we stipulate to a factual basis. He was in court and he underwent the proceeding, and I just was with him. So I wasn't representing him per se there. But what I ‑‑ yeah. But what I ‑‑ it's very clear that the reason he did so was he just could not afford to continue trying the case. He would have done so. And he was not ‑‑ he was one of the conditions of his ‑‑ one of the conditions of the plea of what reckless was that he not be able to appeal the motion to suppress. And I ‑‑ without the opportunity for him to have the ‑‑ to go forward on his 1983 claim, I believe he's being denied remedies that otherwise people would be allowed to have. And certainly, if he had served time and were in the context of a habeas proceeding, I believe he may have been able to bring such a claim. To me, that cannot be what the ‑‑ what the courts and the law intended. So the reason I asked you the question is about the ‑‑ about the plea. Yes. There was a case that was ‑‑ that was sort of uncovered, found or identified in preparing for today's argument, a case called O versus Gwynn. And it's a Ninth Circuit case from 2001. And it deals with a HEC bar, with a HEC bar in the context of a NOLO plea. And I won't say much other than this. Notes ‑‑ the panel notes that the defendant, the plaintiff's plead guilty, either guilty or a NOLO plea. And then in italics, we said, their convictions derive from their pleas, not from the verdicts obtained with supposedly NOLO pleas. So let me rephrase. Their validity of their convictions does not in any way depend upon the legality of the blood draws. That case had to deal with the way in which blood was taken from people who were arrested for DUI. So I will then ‑‑ I will be able to answer your question directly. No, it doesn't undermine the validity of his conviction. And I'm concerned because I have 47 seconds left. So unless you are willing to grant me more time, I should probably save a little bit of it. Yes. That's fine. Thank you. Good morning, Your Honors. Alberto Gonzalez, I'm appearing for Appellee Erickson. It's also come to our attention, there's a new case out there from Judge Felton Henderson, a district court case, Breckley v. DeShawn. And he spoke about the Spencer exception. Judge Henderson was asked, it was a situation where there was a NOLO plea. In that NOLO plea, he ‑‑ the defendant was granted one year of sergeant probation. In our case, we have three years of sergeant probation. The defendant argued that sergeant probation means that the person is in custody. And Judge Felton's argument, actually analysis, actually went over what sergeant probation means and found that the restrictions that attach to sergeant probation are such that your liberty is restricted in such a way that it amounts to being in custody. So for Spencer, you can't get the exception to Spencer because you still have the right to seek habeas. So it's another grounds to apply. Are we talking about the same case here? No, it's a new case we came across called Breckley v. DeShawn by Judge ‑‑ What does that have to do with Heck v. Humphrey? Oh, because it's the same bar. It's saying that Heck goes beyond ‑‑ it assumes that you're out of custody. And so once you're out of custody, you want to go back and challenge the conviction. Well, what if you're still in custody? If you're still in custody, the Spencer rules kick in. Because in Spencer, if you're a prisoner in custody, all you have is habeas. So what we have is a person who is out of jail, but because he's got sergeant probation, Judge ‑‑ He's not trying to end probation. He's trying to get dollars. He is. But for jurisdiction of the court, we're back to jurisdiction of the court. Can he bring his 1983 claim? Heck is one bar. But part of the Heck analysis is, is this person in custody? Because if this person is in custody by being on sergeant probation, then guess what? He can't bring a 1983 claim. He's got to go back to habeas as his sole remedy. Well, that assumes that he's ‑‑ that assumes ‑‑ it gets back to the questions that I was asking counsel here. That assumes that his 1983 action will result in a determination that his plea was invalid. Eventually, yes. Right? Okay. That's what it assumes. That argument assumes that. Now, my question to her and my question to you is, pleading guilty, NOLO, NOLO, which is the same thing as a plea of guilty under California law, why does that ‑‑ and if he prevails on his 1983 Fourth Amendment claim, why does that render his plea to the wet reckless invalid? In the Fourth Amendment claim, what he's doing is he's challenging the validity of the entrance into his home, i.e., that there was no warrant, and second, there was no ‑‑ there were no exigent circumstances. Right? Right? So he's arguing ‑‑ So what does that have to do with his plea where he just admits essential elements of a wet reckless? Yes. Would you mind raising your voice a bit? Oh, thank you, Your Honor. All right. What it means is this. If he admits I committed a crime, he's conceding probable cause for the arrest. So that ‑‑ and for ‑‑ he's saying, look, I was driving unlawfully and willfully and wanton disregard of the safety of others. I just pleaded that. No contest. So I'm admitting probable cause that the officers, the officers, it's kind of like a reaffirmation of what the officers believed. Well, why do you say that a plea of guilty to a crime is an admission that the officers acted correctly? Because that's the heck analysis. Suppose that he says I was drunk driving and the officers beat me up when they came into my house. Does that mean the beating up was okay, too, because he pleaded guilty? Oh, and there's a whole line of cases that now parse out the conduct. They will do that. They will say, does this conduct match up with that conduct? So they'll say like this, look, there can be excessive force and there can be a false arrest. So the arrest can be invalidated, but excessive force still stands because they're separate discrete events. Here we can't separate the unlawful conduct of being drunk and the NOLO. I'm pleading to being drunk. He didn't plead drunk. He pled no contest to unlawful driving. Having consumed alcohol, which is a different crime than driving under the influence. And he shouldn't be able to escape the heck bar by pleading down when we know that the conduct, the officers, what they acted for. Maybe he did. Maybe he was advised by counsel that, you know, there's a potential heck bar if you're going to file a civil lawsuit, so you better plead down. You think he was leading that? I don't believe so. I don't know what counsel said. But I do believe that if we start opening up this thing, we're trying to look at probable cause. Did the officers act reasonably in making the arrest? And this person, by pleading no contest, is conceding the officers acted lawfully. And that's the heck standard. You know, what's the unlawful conduct that would, that if you proved the officers acted unlawfully. His plea was that he was driving after consuming alcohol. He had stopped driving. He had started walking. He went to his house. He lay down in his bed. And then the policeman came along. By pleading that he was, had been driving after consuming alcohol, why does he admit that what the officers did was lawful? That's half an hour later. Because that's the effect of heck. We look at what he, what he pled out to. And if it matches up, if it provides the grounds. But he didn't, he didn't plead out to the no trespass into my house. He pleaded out to driving after drinking. And heck, heck has not denounced the court. The cases we've come across have never, there's one case, there's a balance we talk about in our, in our briefs where it talks about what a suppression motion does and how that kind of a, if you lose the suppression motion, that's also an issue in this case. Because you lost the suppression motion. And that. Well, that's a different issue. That gets to, that gets to issue preclusion and whatnot. Right. That's a whole different issue. Which was not addressed by the, by the district court. Right. We actually, you're right. You're right. We've addressed it. The district court did not. They just extended, the district court extended the plea all the way across to the, to the entrance. Do you want to stand up for your, for your. I do, Your Honor. Okay. I don't, not necessarily co-counsel, but. Yeah. May it please the Court, Bill Ayers, I represent the City of Mount Shasta and two of its police officers. If I might jump right to that question that you're asking, and, and that is how does I'm looking at the appellate's excerpts of record, page 30. I think it's the one that you were referring to, Justice Payes. At the bottom of it. Hold on. Is this the minute order? Yes. Let me look over your shoulders. The minute order that says, well, there were two orders, right? There is a formal order of probation that begins at AER 28. The minute order clerk's docket begins at page 30 and 31. I was going to direct your attention, if I might. Maybe I don't have them. I'm looking at the appellant's excerpts of record. She has handwritten down in the lower right-hand corner the numbers. I have, I have a, a superior court. Okay. I got it. We got it. Okay. The things that I would point out here, it, it shows us the date. This is the hearing. Right. It shows that the defendant is present, that he's present represented by a lawyer. It shows us that under waivers, he was advised of his rights and waived those rights. At the bottom, it specifically includes defendant waives his right to appeal any 1538.5 issues. That was important enough to the deal that if you look on page 31, they have the same quote at the bottom. Defendant waives any appeal rights in regards to 1538.5. Refresh my recollection. 1538.5 is a motion to dismiss for lack of sufficient charge? Motion to suppress evidence. That's right. It's a motion to suppress evidence. So what we're, what we're seeing here is that clearly the, there was a discussion and an agreement for him to waive any challenges he had to Judge Cosell's ruling. So you ask, well, how does proceeding with this 1983 action jeopardize the integrity of what happened in the underlying criminal court? Well, if you look at the chronology of what happened in that criminal court action, you had a criminal complaint, you had a motion to suppress, you had double briefing on it, you had the judge looking at the totality of the circumstances, considering all of the evidence, ruling against Mr. Lockett, Mr. Lockett then waiving his rights to appeal that, and now proceeding with a 1983 act. Doesn't that get more to issue preclusion than, than? It does to the claim, yes. The HECPAR? I think it does. I think it does. But I'm not giving up on the HECPAR. That means issue preclusion would mean that he could have, could have litigated that case, that issue in State court. In fact, here he did litigate it, and he lost it. So there should be issue preclusion. Exactly. And when you add on top of that his waiver of appeal rights, he has essentially waived his rights to habeas corpus. This is very interesting because there's some vehicle code provision that says that collateral estoppel doesn't apply to crimes under the vehicle code. I forget the name of it. I have it. I don't know what I did with it. But I was trying to address the idea. No, I understand. But your point is that because he waived his right to, to, to, to appeal, that that was part and parcel of his plea. And if he's allowed to go forward with his 1983 case and he prevails, that would sort of undermine the whole. How would it not? The whole. The whole process. The whole integrity of his, of his plea of guilty. If you allow him to now go forward and claim that my Fourth Amendment rights were violated, that is in direct opposition to Judge Cosell's ruling. If he gets a. No, no. Why is that? Why is it in direct opposition to Judge Cosell's ruling, which was solely the officers acted with probable cause and did not violate your rights? For purposes of suppression of evidence. My understanding of the Court's ruling on the motion to suppress was upholding the law enforcement officer's entrance into the home, that that was not an illegal entrance. For purposes of not suppressing the evidence. That's true.  I would.       I'm sorry. I would. I'm sorry. And you're saying that no constitutional rights were violated in 1983? Justice, I apologize. I lost your question. Don't call me justice, you know that. This judge will do, because there's no justice in the Ninth Circuit. OK. All right. That was a cheap joke. But my question is this. Are you saying that a determination that there was no violation of his Fourth Amendment rights for purposes of suppression of the evidence, which he agreed to, and he agreed to waive his right to appeal that ruling, means that there was no violation of his Fourth Amendment rights for purposes of 1983? I think that what I'm saying more is that if you look at Judge Cosell's ruling and you read it and give it its plain interpretation and then you were to allow this 1983 action to go forward and there were a finding that the law enforcement officers did not have probable cause, that they violated Fourth Amendment rights by entering the home, I think that those two rulings are at odds with each other. And I think that that's one of the things that Heck was trying to avoid, getting back to Heck rather than collateral stop. So you would say that a ruling that the Fourth Amendment was not violated by the policeman for purposes of denying a motion to suppress the evidence, right? Yes. Are you with me so far? I'm with you. Judge Cosell's ruling, right? That ruling ineluctably means that no violation of his Fourth Amendment rights under Section 1983 occurred. We're arguing that and we're also arguing that if you don't accept that argument, if you allow this action to go forward and there is a finding of Fourth Amendment violations, that contradicts what Judge Cosell did. Okay. Judge Piazza circulated that reference to California Vehicle Code, which is Section 408.34, saying that violations, convictions of nonlethal create collateral stop. And I think you might want to take note of that and give us a little briefing on it. And then there's an old case that my staff came up with, which is Johnson v. Matter, M-A-T-E-R, which is 625F2-240, which, again, poses a bit of a problem for you. You know, this was at first blush. I thought this was a very simple heck case. But I've now heard three, at least three different approaches to it. It's not simple. And I think I'd appreciate a short comment from you and counsel on the Vehicle Code and on that old case. I'm not prepared to argue the Vehicle Code section, to be honest with you, and I don't know that Johnson. But I think they may have a case for that.   And I'm not prepared to argue it. They may argue it, but then they go back and brief it. Oh, okay. We would be happy to do that. We could file a briefing order and cite these cases for you. I see that my time's left up and I don't mean to violate rule. That's okay. Any more questions, Joe? Okay. No further questions? Thank you. We appreciate your argument. I'll give you one minute for rebuttal because we've gone way over. Let's see. I think it's a misstatement that an entry of a plea of wet reckless and an agreement not to pursue the appeal on the 1538.5 equates with an undermining of the conviction if my client were allowed to go forward in the 1983 action. One has nothing to do with the other. I mean, just to demonstrate the complicatedness of this, I had conversations with the judge about this issue. And, I mean, I'm not going to go into it. Ms. Rose, help me for a second. Sure. Didn't Judge Cassell determine on the motion to suppress that your client's lockets rights were not violated by the policeman and the evidence was not suppressed? Didn't he have to make that decision? He made that decision, yes. Now, if that's so, you're suing in 1983 and you're saying forget about what Judge Cassell said. His rights were violated by the policeman coming in here. It seems the two positions are ineluctably opposite. So I would say the following. Under the Stone v. Powell case, one has a right to a direct appeal on a denial of a motion to suppress. That's the law of the land. He waived it. He did as part of a plea deal because that's how things move through the system. But he waived it. He waived his right to appeal the motion to suppress. Yes, he did. He appealed. He waived the right to appeal the ruling on the motion to suppress, right? Yes. Which was you lose. There was no violation of the Fourth Amendment. The evidence can come in. Now what do you want to do, right? I understand what you're saying. So tell me why those two positions, Judge Cassell's position and your pleading, are not ineluctably contradictory. I as ‑‑ owing to the fact that he ‑‑ that he waived his right to appeal that so that he could enter a plea because that's how things have to move through the court and that the ‑‑ well, there was conversation about the fact that at least according to the judge and opposing counsel, it would have no effect on his 1983 case, which was part of the discussion. But that's not necessarily relevant here because it's not in the record. I think they're two different issues. He made a decision to move something through the criminal system as we ‑‑ as 90 percent of cases are taken care of. That doesn't mean he loses his constitutional right to challenge it under the civil rights statute, I assume. All right. Okay. Thank you. Interesting case. We appreciate your arguments. And thank you, Mr. Chief. Matter is submitted. Thank you, counsel. Rubido v. Rosengren. Good morning, Your Honors. Mr. Fagan, you're in the enviable position of not having anybody here to oppose your argument. It's a nice feeling, Your Honor. But I do have some questions for you. Sure. No problem. Let me start with this. It was Franklin Delano Roosevelt who said, be sincere, be brief, be seated. All right. And in the spirit of those words, if you'd like, I can get right into my argument or I can address your question to me. Well, let's just get so here's what I understand, Hattie. Correct me if I'm wrong. So this was a global settlement for $200,000. That's correct, Your Honor. And because there were minors involved, you had to go into the district court to get approval of the settlement, correct? That's correct. It actually came as a result of a mediator's proposal, which all the parties accepted. Because the minors' claims were involved, we had to go in. I filed a motion on behalf of the plaintiffs to have it approved. And you had tried to separate the issue of attorney's fees from the settlement? That's correct. Well, actually, Your Honor, as I said, the attorney's fees were obviously part of the settlement. Well, but you could have filed, the defendants could have agreed to let you file a separate motion. That was proposed during the, that was, I had proposed that during the course of the mediation and the defendants rejected it. Right. Because they wanted to make sure that they were capping their liability. Absolutely. Right. Okay. So you had to go in to see the district court judge to get this approved. That's correct. Right? Now, isn't that different than filing a motion for an award of an attorney's fees under 1988? It's different only in the sense that the minor's claim also has to be settled. The court has to look at it and say, was it fair to the minor, the portion of damage is asserted to the minor, then are the attorney's fees also fair? That's the first thing he has to do. That's correct. First determine whether the gross amount being allocated to the minors is fair to the minors. And then consider what attorney's fees a minor should pay. Absolutely. All right? Now, isn't that what the district judge did here? No, he didn't, Your Honor. Why didn't he? Because what the He expressed concern, his whole reason for not approving the settlement in total was because he thought that the 56 percent that you were going to get from the total settlement was just too much in light of the fact that you had minors involved. No. What the judge did, the district court judge did, was at first, as I said, he looked at the information that had been provided about was it fair to the minors. And the evidence before the court showed that this was a monetary settlement that was higher than the average settlement in a fair housing case. So the court was satisfied that the minors were receiving a fair monetary settlement. Well, he was satisfied with the overall global per person award. Forgetting about attorney's fees for a minute. No. Fees were coming out of that amount. No, Your Honor. Because as I said, the court was presented with the settlement saying is $105,000 enough for the individual plaintiffs. And the court in looking that said yes, it is. As I said, the evidence was given to the court that the average fair housing case with familial status was the total of $49,000, which typically includes attorney's fees and cost. So here, as I said, the court was presented evidence showing it that indeed that these individuals were receiving a fair amount of money for their injuries. Were you talking about net to the minors or gross to the minors? The net to the minors, Your Honor. As I said, the net settlement was more than the average settlement, as I said, in a fair housing case. Indeed, the case when I submitted the information from HUD showing that a similar case had settled for substantially less money, again, there was evidence before the court to show that this, from a monetary standpoint, separate from attorney's fees, was fair to the minors. But what's wrong? Why couldn't the judge he was exercising his discretion on whether or not to approve this settlement, correct? Yes, he was, Your Honor. He didn't have to approve it, did he? No. He did not have to approve it. I'm not arguing that because we accepted a mediator's proposal, it's mandated the district court accept it. Not at all. Because the court has a duty to make sure that the settlement, when there are minors involved, is fair to the minors. But he didn't think this was fair to the minors. The problem he thought, as I said, when he said he basically says 56 percent of the amount of the award going to the lawyer was too much. Yes, he did. But the reason why he said he wanted more money to go to the kids. That's not so, Your Honor. Then what was he doing? What he was doing, Your Honor, was looking at it and saying that essentially his hands are tied by the local rule that says I have to be proportional about this. Because of the fact that Sacramento Superior Court Local Rule 10.02 says a reasonable attorney's fees is 25 percent, Mr. Fagan's bill is above that. I can't approve it. And then he went on to start to say we had to look at it for the extraordinary performance to get it above that. Whereas the United States Supreme Court has said in the city of Riverside that that's not to be the case because it's going to affect these types of cases. You're not going to get competent counsel. These are not personal injury cases. There's a lot of labor and work that go into these cases. I understood the he just looked for guidance because there's I remember as a district judge we used to get these cases into the court where we'd have to approve a minor's comp. And there really isn't much out there about what the district court judge is to do. And so you look to the state court where this happens all the time. This is fairly frequent, a fairly frequent occurrence in the state court because there's a lot more tort litigation in the state courts. And the state courts have adopted these rules under the probate code of saying, you know, 25 percent sort of is a thumbnail out of the total damage award that goes to the kid. Your Honor, with all due respect. I'm just saying no. It's just and so district judges have tended to look for guidance about how to evaluate exercising their obligation under Rule 17. They've looked for guidance. And that's all it really is, is looking for guidance. And from there, as he did here, he gave his award was actually what, about 36 percent? Thirty-three percent plus cost, Your Honor. He didn't look at local Rule 10.02 for guidance. He applied local Rule 10.02. He didn't look at he could have. And the Ninth Circuit has said that the way that we ascertain the appropriate attorney's fees is by doing a lodestar analysis. He started off doing that, essentially saying that there has been evidence presented that this is a reasonable hourly rate. And as he looked at the bill, he said that everything that I see is reasonable. He indicated that in his order. But what he did was say that the local rule says this is what they do in California, so that's what we're going to do here. He shouldn't have done that. He didn't do 25 percent. He did 33 percent. He started to look to the practice guide, and he said the practice guide says if it's above, we'll look for extraordinary efforts. And that's not what the Supreme Court has said. The Supreme Court has said that an attorney who represents these types of plaintiffs is supposed to receive a reasonable fee for all the work done on the case. So in your view, he should have done he should have gone through a complete lodestar analysis. That's correct. Independently arrived at a lodestar analysis and then say, hmm, I got to cut it down by what the lawyer is willing to have me cut it down. No, I'm not saying that, Your Honor. You're saying? No, it's not, Your Honor. What I'm saying is he really had a two-prong analysis. One, is there evidence that this amount of money is fair for the minor? That was presented. And what did he have as evidence on that? For instance, the minor, Jesse Robidoux, got $2,500. How old was Jesse? Jesse was less than a year old. So whatever discrimination was exercised as to his parents, he had a very nodding relationship with. Right. And how old is Michael Burke? Michael Burke was less than a year old as well. Now, Randy Robidoux was a minor. How old was Randy? Randy was 9 and 10 during the time. Okay. And Hannah Burke? Hannah Burke was 5 years old, I believe. If he had done the low-star analysis, how would it have come out? If the court had done a low-star analysis, essentially the court started to do the – in fact – If he had done it, how would it have come out? If he would have done it, the court itself said the hourly rate was reasonable and all the time. I mean, in terms of money. The court would have said 100 and – You can't tell me what it comes out to in money? Yes, I do, Your Honor. It would be approximately $179,000. That's what would have been a reasonable attorney's fees in this case. But as I said, that's when I reduced my attorney's fees and said to the court, Look, under the terms of the fee agreement, I was entitled that there was a lump sum settlement to get the hourly rate times the amount of time that I had billed. That matter went before the court. The court looked at it and said the hourly rate's reasonable. The amount of time they put into the case is also reasonable. But the problem the court had was the local rule 10.02, which obviously with the further briefing I showed you, that the California Legislative Judicial Council has said that's not the case. That's not the law. He should have done a low-star analysis as part of this global – as I said, as analyzing the whole thing. He didn't do that. His bottom line was he was very troubled with the 56 percent. Absolutely that he was troubled with it because of local rule 10.02. Do I need to stomp? I'm sorry. I'm never going to. This is all very interesting because I think it poses the dilemma that the district court judges have in trying to fulfill their obligation to look out for the best interests of the minors as well as making sure that the civil rights laws are adequately enforced. And they sort of come into conflict. They do, Your Honor. And that's why, as I said, I gave the court proof that this was a fair monetary settlement for the minors. And that's how come I also, as I said, had attempted to bifurcate and say decide the attorney's fees on your own, but that was rejected. Okay. Thank you. Okay. Thank you. I realize this is important to you because these cases arise under the cases you litigate primarily, housing cases, and where you're focusing on discrimination against children, you're going to have a lot of minor defendants. And what happens, Your Honor, is that as a practical matter, when someone shows up, a minor with children or a family with children, there's a concern that, hey, look, I could do all this work and not get fully paid. So, okay. Thank you. Thank you. Thank you.
judges: Noonan, Paez, Bea